Case number 100287, Edward Burke v. Timothy McKernan. Good afternoon, Jim Borsher for Diapolis. Good afternoon, Your Honors. My name is Michael Pildes, and I represent the plaintiffs, Alderman Edward Burke and Colleen Riemeyer. Okay. Each side has 15 minutes. We don't look at our watch in this polyglot division, but it does behoove you to get to your strongest points first. I can assure you we've read the briefs, the pertinent portions of the record. So we'd really appreciate it if you could get right to your strongest points. And any time you're ready then, Mr. Pildes. Thank you very much. May it please the Court. We're here, obviously, because we believe that Judge Mackey was in error when he granted the Defendant's 2619 motion relating to all of the counts of our Third Amended Complaint. We have pointed out to Your Honors the errors of Judge Mackey, and that for purposes of a 2619 motion, the Court should have accepted as fact the allegations that are well pled in our complaint. And there are essentially four significant ones. One, that Thomas McKernan was gifted shares from his father and mother in the McKernan Corporation in 1984, that there was a stock gift agreement, and that that agreement made it very clear that the gift was unconditional, unequivocal, no strings attached, no conditions subsequent, nothing. That that stock was later transferred by Thomas to a trust that he arranged for, and that was, the gift was in 1984, the stock was transferred to the trust in 1996, and until 2007, Thomas, nor the plaintiffs in this case, had any idea, and that's one of the essential allegations in our complaint, no notice that there was any issue about the ownership of those shares. But the initial trustee certainly, he had a copy of the trust, did he not, the written instrument? The original trustee had a copy of the trust agreement? Yes. Yes, of course. So he then would have known that he was under an obligation, pursuant to law, to distribute the trust, not early on, but was it 2001? It was either 2001 or 2006, has been suggested, or something else, but yes. But again, just according to the written instrument now, the instrument said, is to be distributed in 2001. Correct. Is that correct? First distribution. Yes, he was supposed to distribute in 2001. So you're not arguing that he didn't know that he had to distribute it in 2001? No, not at all. Okay. No, the argument, Your Honor, is that neither the trustee nor the other plaintiff, in this case, Colleen Remeyer, knew, or should have known, that in 1995, the defendants initial, started with a civil conspiracy, which they carried out for over a period of a dozen years to get back those shares, convert them, eventually sell them, and keep the money, which is just exactly what happened. But for purposes of the 2619 motion, the allegation of the plaintiffs that they did not know of this scheme, and did not know of these acts, should have been taken as true by Judge Mackey. The fact that the defendants, in their pleadings, decided to posit an alternate set of facts, for the court to consider, should not have been considered by the court in its disposition of the 2619 motion. The court should have accepted the fact that we did not know, and we didn't know of their scheme. In 1996. In 1996, at the time the shares were transferred, or any time after that, until 2007, when Timothy McKernan came to his sisters, at his initiation, and met with them, and proffered for them, and tried to get them to accept a settlement agreement, in which he described the disputed shares, and submitted in the settlement agreement, that yes, Thomas had transferred the shares to the trustee, but that Edward and Timothy and the corporation had attempted to void those shares, and so that there was a real legitimate dispute in one of the accounts of our complainants for declaratory judgment. That's when we found out there was a dispute. Counsel, what about the letter from Mr. Anderson in 1996, directing that the certificate be deposited with the trust, not later than February 22nd of 1996? Yes, Attorney Anderson, Your Honor, requested that they send back to him a newly issued certificate. Is that a notice? No. The fact that the certificates were not deposited, or the certificate was not deposited on the date specified, is that notice? What he requested was that the transfer of the shares be noted on the books of the corporation, and that he be sent a new certificate. Did he receive it? He did not receive. However, we have alleged in our complaint that on numerous occasions after that, the defendants specifically advised the trustee at the time, Mr. Policcio, that the shares had been transferred on the books. I would add, Your Honor, that the actual possession of the stock certificate is not necessary for ownership. The transfer happened when the shares were endorsed by Thomas and delivered to the trustee. That's the transfer of ownership right there. Now, Mr. Policcio filed the initial complaint in March of 2008, and then Mr. Burke filed his second and third amendment complaints in December of 2008 and later. Is that right? That's correct. Would you agree, then, that if the statute of limitations had run by the time Mr. Policcio had filed the complaint in March, that Mr. Burke stepping into the case as a successor trustee would be of no legal significance? Yes. However, we've made very clear that the statute of limitations began to run in 2007 on every single one of the counts of our complaint, beginning with the declaratory judgment count, as I've just said. We found out there was a dispute in 2007. As you pointed out, we filed our case just a few months after we found out. And, Your Honors, I would remind you that when Timothy came to his sisters in July of 2007 and advised them that he wanted to settle with them and to settle the issue of the disputed shares, not only was that their first notice, but their brother, Timothy, offered them a million dollars, half a million dollars each, when he knew that he was selling the corporation in a matter of a month or two for $30 million. And it is clear, Your Honor, from the records that the sale of those shares in October of 2007 for $30 million was the culmination of this string of overt acts that had been committed by the defendants. And I could enumerate them, but they're all set out in our briefing with very great particularity, from 1995 to 2001 to 2002, 4, 5, and 7. And I would, Your Honors, request that you consider the Connolly v. Dooley case, which I think is very, very clearly on point as far as our case is concerned, and that the import of the Connolly case is, first of all, and I would hearken back to the main issue here, and that is, was the trustee a shareholder in 2007? We submit that the Court had to accept that fact as true for purposes of 2619 and not accept an alternate reality that's proffered by the defendant saying, no, you weren't. That's a factual dispute. Factual disputes are not to be resolved in a 2619 motion. The Court should have accepted that we were a shareholder. Connolly, however, is very clear on the point because the Court in Connolly said very specifically that the shareholder status is a factual issue and that it is not properly resolved in a 2619 motion. That's one of the most important parts of Connolly. In addition to that, Connolly speaks to our facts because in Connolly, when the shareholder shares were converted and sold and the proceeds were kept by the converter, the Court said that that breach of fiduciary duty, and clearly here, Your Honors, Timothy McKernan was a fiduciary. He was the president of the corporation at the time. And that the breach of fiduciary duty and the conversion occurred at the sale of the stock and the distribution, which did not go to Mr. Connolly in that case and did not go to the plaintiffs in this case. And, Your Honors, our fraudulent concealment allegations are laid out in very great particularity and the Court should have accepted those for purposes of resolving the 2619 motion. Well, isn't that one of the problems, though, that the Court, that their argument is that accepting those exhibits and the letters and such which are in the complaint or mentioned in the complaint and attached to the complaint, isn't their argument that the trial court did consider those and said, well, he was certainly on notice in 1996 based on a letter in addition to being on notice by 2001 when he had to distribute it to the trust and didn't. Didn't the trial court rely on those? Could the trial court rely on the matters that you just mentioned since it was part of your complaint? No, Your Honor. And why not? Why not? Because the Court is supposed to accept our allegations. It's true. For purposes of this motion, yes, we could have a nice, robust round of discovery, depositions, document production, and at the end of that, the defendants are certainly at that point legally free to file a motion for summary judgment, whatever the case may be. But for purposes of this motion, at this very, very beginning of the case, the Court should have accepted our allegations and not the alternate reality. And when you mention the letter, Your Honor, were you referring to the letter that Father Edward wrote to his son, Thomas? I'll be honest. I'd strike that portion because I was looking at something else. But, yes, so go ahead. Because there was nothing in that letter that said, we're going to take your shares. All it said is, you have failed or the consideration for the gift has failed. Send me back the shares. This is a father and a son now. This is not the corporation. This is between two individual people. And there was nothing in that which said to Thomas or gave Thomas notice, oh, you're taking my shares away? No, nothing like that. And, Your Honor, when the defendants acted in secret, essentially, and attempted to take the shares in a corporate meeting by telephone where they didn't even give notice to every director, and they claimed this occurred, they never sent any notice of the results of that meeting to the person whose shares they allegedly were going to void. And it's clear from the records that these conditions were something made up 11 years later and that there was never a single allegation in 11 years that there had been any conditions to the gift whatsoever. But all of the actions they took, they took in secret and certainly never gave notice to the plaintiffs or to Thomas either. You're not disputing that there was no distribution in 2001 as directed by the trust agreement? No, Your Honor, there's no dispute about that. And may I also question whether not just Judge Mackey dismissed this complaint, but also Judge Hall as well, is that correct? She dismissed prior amended complaints, yes, correct. So both of those judges were incorrect? That's absolutely correct, Your Honor. They were wrong and in error. Well, thank you. You have time for replying. Thank you very much. Mr. Borsha. Thank you, Your Honor. May it please the Court, counsel. The crux of the matter is that the Court is required to accept the plaintiff's well-plead facts in a complaint, but not conclusions of law. In this case, the plaintiff, in essence, pled themselves out of court by their allegations. The plaintiff in their complaint set forth the basis for the statute of limitations defense. They pled in their complaint that there was a letter sent by Ed to Tom back in 95 where Ed demanded the shares back from Tom. They also pled in their complaint that November 2005, I'm sorry, November 95, the corporation declared Tom's stock to be void. On what basis? On the basis of what was set forth in the letter, that the corporation declared because of the actions that Tom had undertaken, it set forth in Ed's letter before that, that the corporation decided to declare his shares void. In 2006, in January, the plaintiff alleges that there was a trust set up. By that point in time, the shares are already gone, according to the corporation. So at that point in time, what we have here is the plaintiff is, in essence, attempting to challenge those actions. What happened in 2007 is not relevant. Those shares, according to the corporation's records, were declared void in 95 and never reissued to the plaintiff, and the plaintiff is now trying to challenge those actions. Were those shares a gift? Yes, they were. Were they conditions to the gift? Well, that's a source of, I guess, debate. There's evidence in the record going both ways on that. But the issue is they want to now challenge that voiding. The action to do that began back in 95. You can't wait until 2007. I'm sorry, go ahead. What knowledge and how is this knowledge that the corporation had voided the stocks in question relayed to Mr. Policcio or to the brother? Well, at the point they were voided, Mr. Policcio wasn't in the picture. Remember, the trust was set up in 96. The shares were void in 95. There was a letter that was sent by Ed to Tom, which explained his belief that the shares were inappropriately being kept by Tom and should be turned back to the corporation. That was given to Tom before the meeting. There's nothing in the complaint pled about what notice was given to him, but the bottom line is the corporation took that action in 95. The corporation was sold to Richard and Timothy in 2007, right? No, it was sold to Richard in 2007, correct. And wasn't that the last overt act? Oh, no. The overt act that they're complaining about is the corporation's disenfranchising them from the shares in 95. After 95, these shares were gone. The corporation took back the shares, reissued the stock in Ed's name, and, in fact, the corporation bought the shares back from Ed in 2002. So you don't think that this is a question of fact at all? Absolutely not. The facts they have pled show that this issue was ripe back in 95. You have the issue also of the attorney sending the letter to the corporation and demanding that the corporation reissue the shares in the name of trust. Isn't that a better argument, the letter from Mr. Anderson? I think there's argument that it could be. As opposed to the action in 95. I can see it that way, Your Honor, but it goes beyond just the share issue because as a shareholder you have certain rights. You have rights to be notified of meetings. You have rights to dividends. And the plaintiff here was asleep at the wheel. There's no evidence of any notice to the plaintiff after the shares were disenfranchised in 95. There's no shareholder meeting notices. There's no dividends. For the plaintiff to say, I didn't know this happened. They did not fund the trust. What's that? They did not fund the trust. That's also correct. The trust was supposed to be funded and distributed in 2001. That didn't happen. And this is all pled in their complaint. And for the plaintiff now to say, we didn't know until 2007 there was this controversy. That's just not credible or believable, given the fact they've pled, which is we had our attorney send a letter back in 96. We didn't get any shareholder notices. We didn't get any dividends. In 2001, the trust was supposed to be distributed. That didn't happen. And for them to say now in 2007 the light bulb went off is not believable, but also the law requires inquiry notice, not just inquiry notice. They have to make reasonable inquiries into their claims. They were asleep at the wheel for 12 years, 11, 12 years. Well, when you made your motion to dismiss under 2619, did you file any affidavits? We did not. Pardon? We did not. And if you put all these things in affidavits, do you think that might have made a difference? Well, I don't think the affidavit was necessary because the facts, if you look at their complaint and the exhibits they attached to their complaint, those tell the story. They pled all these things in their complaint. They pled the 95 transaction. They pled the trust issue. They even attached to their complaint the letter sent by the attorney. They attached the trust, which required the distribution. So I think based on their own pleadings, they pled all this in the complaint. But that was a matter of trial strategy. Wasn't it on your part or whoever handled this case in the trial court that, as Justice Gordon points out, rather than attack those, you relied on those? You relied on that without filing any counteraffidavits? Correct. They could have certainly pled their complaint differently, and they could have pled it without putting these things in there. Then we probably would have been faced with having to do a motion for summary judgment. But they decided to plead these facts in their complaint. And when you do that, the court has to accept their facts as being true, but doesn't have to accept their legal arguments. Here we had, as you pointed out, we had two separate judges look at these issues, look at the facts they've pled. I'm not impressed that two judges looked at it. Just speaking for myself. But they came to the same conclusion. And the basis, if you look at their complaints, they really didn't change much at all. One of the issues that changed was we have a new trustee that came in the picture for some reason. But the bottom line is the factual allegations are basically the same from the first complaint to the last complaint. So I don't think they are. They are, but isn't the issue here, then, what is the legal effect of the alleged voiding of the stock certificates in 95, apparently, or whenever finally the vote was taken in the absence of the brother by the one brother and the dad? Isn't that the issue? I don't think it is. Because you don't get to that point unless you have a viable claim, time-wise. If they had filed this claim back in 99 or 2001, we'd have that issue. But you can't sit on your rights or potential rights for 11 years and say, we want to now raise the issue without the corporation properly disenfranchised us. It's too late. We're not dealing with the merits. We're dealing with the time to do that has long come and gone. And that's why we don't have to get into whether the corporation's actions were proper. But don't we have to get into the knowledge of the brother? Don't we have to get into that? How would he have known that these things occurred? And since he says, now, goodness, extremely conclusory, I don't know anything like that. I have no idea. I'm catching it. I learned that after the fact. Well, I think the complaint tells the opposite, and that is the trust-owned lawyer sends a letter out. And counsel makes the argument that they made some allegations that afterward they were promised that the corporation shares were actually transferred. If you look at their complaint, there are no facts pled to support that. There's no specific allegations pled. All you have is counsel's argument saying that happened. There's nothing there. So there's certainly enough in the complaint to put, at the very least, the plaintiff on inquiry notice that you had a potential claim here. You're not getting shareholder notices. You're not getting distributions. You're not getting dividends. You have your lawyer send a letter out that says, I demand that you send these shares back, and that doesn't happen. And yet you still do nothing. That's the ballgame. Would you respond to the suggestion that I believe it was Timothy met with one of the beneficiaries in 2007? Well, I can. And the reason that happened is because, although it's not in the complaint, is that there were accusations being made before this complaint was filed that there was this controversy. And Mr. McKernan, this is a family, tried to appease her by meeting with her and dealing with and trying to resolve this so we didn't have to deal with this today, that we wouldn't have to have a lawsuit to deal with. But the fact is that they had raised this issue shortly before, and that's why there was this meeting. I don't know the particulars. I was not there. But that's not relevant to the issue today, I don't believe, because the issue is whether or not there's a time for a claim when they file the claim. Our submission is, and the trial court properly filed, we believe, that long since passed. Whether he wants to accommodate her, even if you affirm the trial court's ruling, he can still try to accommodate his family and do something gratuitously. But the issue we have today at the base is – Isn't it a little late for that? I mean, it's a fight over a lot of money. And if your client had wished to be magnanimous and help his family out, he could have done so. We hear this all the time. It's what we do for a living in civil. We sit here and say, oh, my client could be nice. Well, apparently, yeah, I'm sure he could. He could be generous or not. We're sitting here because that bridge has been burned or the decision has been made for these years that he's not going to be so. I think that's a fair assessment. I don't know what's going to happen in the future. We can't predict it. But I do know that they'd like to – he'd like to still have a relationship with his family. And that's obviously been strained by this whole series of events. But legally speaking, we don't believe they have a leg to stand on at this point in time. Okay. Thank you. Thank you. Reply briefly. Thank you. One of the most significant things that counsel just said was when asked about the alleged conditions to the gift is that, yes, the conditions are up for dispute. That's a polite way of saying there is a factual dispute. But what is the import of that? The import of that is what if there were no conditions? And the documents, Your Honors, show there were no conditions. If there were no conditions, was the action taken at this alleged meeting in 1995 to declare the shares null and void? Is that something that was legal or not? That's a factual dispute. So, Your Honor, if you put the complaint and the motion, the 2619 motion side by side, and you have two different versions with different issues of fact raised or facts alleged, the court is required to accept our complaint. Counsel briefly touched on the idea that somehow or other we were asleep at the wheel because we didn't get any notices or any dividends or anything. That's a lawyer's argument. That is not in the record. Not in the record. There's nothing in the record that says there were or there were not dividends or notices either before 1995 or after 2000. The failure to fund the trust is not notice? The failure to make a distribution six years later, five years later, is not notice? No, Your Honor. I believe that the trustee has an obligation to disperse the trust, and if he didn't distribute it, then he didn't act properly as a trustee, perhaps, but that's not notice to the beneficiaries that he doesn't have the shares. He never told them he doesn't have the shares, and whether actually having the certificate or not is relevant to that is not in the record, and it's not notice. The fact that he didn't have the certificate, as I've said before, having the certificate is not necessary to indicate ownership. And I agree with that, and that's why I've never raised that question of possession of the certificate. I raised the question about funding the trust, and that's different from having possession of the certificate. I'm not raising the question about possession. I understand. There is a value affixed to the certificate, and the suggestion that as a beneficiary I have no interest seems to stretch common sense. You must be concerned about the absence of a distribution. Well, there's no evidence in the record that the beneficiaries requested a distribution or that the trustee proffered any. Well, that would be successful, certainly, if what they needed to prove on a statute of limitations defense would be actual notice as opposed to being put on a sufficient notice to require an inquiry by a reasonable person. So if that's the law, and I believe it is the law, speaking just for myself, that if a reasonable person, you have to hold the trustee here to the reasonable person standard, he has to make an inquiry. Is it so strong under these facts that he should be required to make an inquiry? And having failed to make an inquiry, a reasonable inquiry, because they made none, is it fair to apply the statute of limitations? Your Honors, the basic fact here that has to be focused upon is, was the trustee the owner of those shares in 2007? Counsel's argument took you right back to the issue of, factually, why the trustee didn't own those shares. That's because they were declared null and void in 1995. Our complaint said we were the owners of those shares. And, again, Connolly tells us that the resolution of that dispute, that factual dispute, as to whether or not we were shareholders, is not for a 2619 motion. If we owned the shares, whatever we did in 2001 or 2002 wouldn't make any difference. We owned them in 2007. They sold them. They kept the money. That is the essence of the 2619 issue. Well, in Connolly, though, of course, it involved the estate of James Dooley. The suit was filed shortly after Dooley's death, wasn't it? It was filed reasonably soon after, yes. But the court was very clear that the breach of fiduciary duty and the conversion occurred upon the sale of the shares. We certainly filed our complaint within a very short time after we found out what happened. And also, Your Honor, I just want to sort of work clear on one thing here. Counsel is pointing to the exhibits to our complaint about all the things that are there, the 95 letter and the 2001, and making it sound as though we knew all those things at the time. These are just documents that we got after 2007 once we found out what was going on. While restricting it, though, not to stop you there, but certainly the 95 letter, it's in your complaint that you got the 95 letter from the dad saying, well, I'm concerned about this. But as you pointed out in your opening argument, they didn't say, you must return them to me. It wasn't a demand. They said, I'm concerned. I don't think you did what I wanted you to do. And then the 96 letter from the attorney, which just demands the shares to be new shares. I mean, the dispute is over these 440 shares. And what does the attorney for the trust do? Nails these back to the people of no intention of ever returning them, right? Not a very good move, as it turned out. And then the 2000 thing, which is obviously where we're all hung up, is how can the trustee say that by 2001 when he was obligated by law to make the distribution and he didn't have anything to make the distribution with. But he's not unnoticed. I mean, so those three things are not questions, I think, of fact. Those are your stuff. Well, I would point out, of course, that the attorney who sent the shares to the corporation was Thomas's attorney. Correct. The settlor. He wasn't the trustee or the beneficiary. I understand. And as to the beneficiary, you say in the complaint the beneficiary had no idea any of this was going on. Obviously, the trustee knew some of it was going on. So, Your Honors, I would just end with, again, Connolly, which seems to be so clearly telling us that the statute of limitations for all of our issues began to run in 2007 and leave you with the issue, could a 2619 motion properly deal with the issue of whether or not the corporation's declaration of null and void, is that something to be resolved by a 2619 motion? The court had to resolve that issue by saying we weren't shareholders in 2007. But isn't that the nature, honestly, Counsel, of a statute of limitations defense? You don't need a statute of limitations defense against nonsensical or baseless claims. It is used as a defense against good claims where people are harmed and they have a good action. And so that's the nature of it. We don't need to take care of the chaff. You'd hope. Not that it always happens. But in terms of statute of limitations, it kills all claims, good or bad, especially good ones. And that's where we're concerned. Every case that he did an excellent complaint. The question here was, was it valid? Your Honor, I think the question is, for a 2619 motion, can the court make a determination on a question of fact, whether or not the trustee was a shareholder in 2007? Connolly tells us that it's absolutely improper for a 2619 motion. We were shareholders. That's what we alleged. And for purposes of this motion, we were shareholders. Factual arguments to the contrary are not to be considered for this purpose. Thank you. Thank you very much. This case will be taken under advisement. Thank you for the brief scenario.